722 A.2d 657

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Lori LASSITER, Appellant.**

Supreme Court of Pennsylvania.

Submitted July 10, 1998.

Decided Dec. 23, 1998.

589

Norris Gelman, Philadelphia, for Lori Lassiter, appellant.

Catherine Marshall, Philadelphia, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

CASTILLE, Justice.

This Court granted review in order to determine whether: (1) trial counsel was ineffective for failing to advise petitioner that the Commonwealth's promise not to pursue the death penalty if she agreed to a bench trial constituted illusory consideration because the death penalty would not have applied had the matter gone before a jury; and (2) trial counsel was ineffective for failing to object to appellant's waiver of her right to a jury trial on the grounds that *any* waiver which is induced by the threat of the death penalty is necessarily an involuntary and coercive waiver. The Post Conviction Relief Act ("PCRA") court determined that trial counsel was not ineffective, and the Superior Court affirmed. For the following reasons, we now affirm the Superior Court.

The Commonwealth adduced evidence at trial which established that appellant, a prostitute, was owed money by William Carter. To satisfy the debt, Carter agreed to help appellant rob a cab driver whom appellant knew. Pursuant to their plan, appellant enlisted the services of the victim, and asked the victim to drive her to a prearranged location where Carter

lay in wait. Subsequently, Carter approached the vehicle, told appellant to get out, and shot the victim in the head. Carter and appellant then dragged the victim from the cab and completed the robbery.

A week later, appellant voluntarily reported to the Philadelphia Homicide Division to answer questions, and police subsequently placed her under arrest. The Commonwealth agreed that it would not seek the death penalty in exchange for appellant's agreement to waive her right to a jury trial. On October 31, 1989, following a bench trial, the trial court convicted appellant of second degree murder, criminal conspiracy, robbery, and possession of an instrument of crime. The trial court sentenced appellant to the mandatory life sentence for second degree murder, and imposed concurrent terms of imprisonment for the other charges. Appellant's direct appeal from judgment of sentence was denied.

On March 29, 1993, appellant, *pro se,* filed a PCRA petition. Subsequently, counsel was appointed and amended the petition. On June 25, 1996, the PCRA court denied relief. The Superior Court affirmed the denial of PCRA relief. On December 31, 1997, this Court granted allocatur.

Appellant first argues that trial counsel was ineffective for failing to advise appellant that the Commonwealth's promise not to pursue the death penalty if she agreed to a bench trial constituted illusory consideration because the death penalty would not have applied had the matter gone before a jury. Specifically, appellant argues that the only aggravating circumstance which even arguably applied to her was the circumstance enumerated at 42 Pa.C.S. § 9711(d)(6), which provides: "[t]he defendant committed a killing while in the perpetration of a felony." Appellant points out that she was only an accomplice to murder under the theory of the case advanced by the Commonwealth at trial, and contends that the legislature did not intend the aforementioned aggravating circumstance to apply to accomplices. The Commonwealth argues that Section 9711(d)(6) embraces accomplice liability, and that even if it does not, appellant has failed to establish that trial counsel's alleged ineffectiveness prejudiced her. Although we

agree with appellant that Section 9711(d)(6) does not apply to accomplices, we find that appellant has failed to establish that she was prejudiced by trial counsel's ineffectiveness. Therefore, we affirm the lower courts' denial of PCRA relief.

Under the version of the PCRA at issue here,[1] appellant must satisfy the following requirements to be eligible for relief:

(a) General rule. To be eligible for relief under this subchapter, a person must plead and prove by a preponderance of the evidence all of the following:

. . . .

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of Pennsylvania or the laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

. . . .

(v) A violation of the provisions of the Constitution, law or treaties of the United States which would require the granting of Federal habeas corpus relief to a State prisoner.

. . . .

(3) That the allegation of error has not been previously litigated and that one or more of the following applies:

(i) The allegation of error has not been waived.

1. Since appellant's PCRA filing pre-dated the November 17, 1995 amendments to the PCRA, the standards set forth below are drawn from the version of the PCRA that existed prior to the 1995 amendments. *See Commonwealth v. Whitney*, 550 Pa. 618, 708 A.2d 471 (1998).

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a state procedural default barring federal habeas corpus relief.

42 Pa.C.S. §§ 9543(a)(2) and (3)(1988).

 The standard of review for claims of ineffective assistance of counsel is well-settled in the Commonwealth. A criminal defendant sustains a claim of ineffectiveness of counsel by proving by a preponderance of the evidence: (1) that the underlying claim is of arguable merit; (2) that counsel's performance had no reasonable basis; and (3) that counsel's ineffectiveness worked to his prejudice. *Commonwealth v. LaCava*, 542 Pa. 160, 178, 666 A.2d 221, 229 (1995)(citing *Commonwealth·v. Edmiston*, 535 Pa. 210, 237, 634 A.2d 1078, 1092 (1993)). Assuming appellant can establish counsel's ineffectiveness through the three-pronged test set forth above, appellant must then demonstrate under the PCRA that the ineffective assistance of counsel "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." [2]

 The first issue which we must resolve is whether appellant's underlying claim that 42 Pa.C.S. § 9711(d)(6) does not apply to accomplices is of arguable merit. Determining the scope of Section 9711(d)(6) first necessitates an iteration of basic principles of statutory construction. This Court has held that when the language of a statute is clear and unambiguous,

___

2. The issue of whether the additional statutory requirement imposed by the PCRA violates the Sixth Amendment's guarantee of effective assistance of counsel is currently pending before this Court in *Commonwealth v. Kimball, alloc. granted,* 548 Pa. 615, 693 A.2d 587 (1997). However, for the reasons set forth herein, we find that both of appellant's ineffective assistance claims fail without resort to the additional burden imposed by the PCRA. Therefore, the outcome in *Kimball* has no bearing upon the issues raised by appellant. *See Commonwealth v. Lark,* 548 Pa. 441, 450, 698 A.2d 43, 47 (1997)(resolution of constitutionality of PCRA ineffectiveness standard deemed unnecessary if claims fail under common law ineffectiveness standard).

its provisions must be read in accordance with their plain meaning and common usage. Only when the statutory language is unclear may the Court delve into legislative intent. *Commonwealth v. Bell*, 512 Pa. 334, 340, 516 A.2d 1172, 1175 (1986); *Coretsky v. Bd. of Commissioners of Butler Twshp.*, 520 Pa. 513, 517, 555 A.2d 72, 74 (1989); 1 Pa.C.S. § 1921(b). This Court has also noted that the ultimate principle of statutory interpretation must be that each word used by the Legislature has meaning and was used for a reason, not as mere surplusage. *Fisher v. Dep't of Public Welfare*, 509 Pa. 164, 169, 501 A.2d 617, 619–20 (1985)(collecting cases). Finally, it is axiomatic that, under the rule of lenity, penal statutes must be strictly construed, with ambiguities being resolved in favor of the accused. *Commonwealth v. Wooten*, 519 Pa. 45, 52, 545 A.2d 876, 879 (1988); *Commonwealth v. Gordon*, 511 Pa. 481, 487, 515 A.2d 558, 561 (1986); 1 Pa.C.S. § 1928(b)(1).

Appellant and the Commonwealth have extensively briefed the legislative history surrounding the enactment of Section 9711(d)(6). However, applying the aforementioned principles of statutory construction, we find it unnecessary to turn to legislative history in this matter. Instead, we believe that this matter can and must be resolved by reference to the text and plain meaning of the statute itself.

The aggravating circumstance at issue requires that the defendant "committed" a killing while in the perpetration of a felony. Webster's defines "commit" as follows: "[t]o do or perpetrate (an offense or crime)." Webster's New World Dictionary (2d ed.1996). The word "do" is thus defined: "to perform; to carry out; fulfill; to bring to completion; finish." *Id.* The word "perpetrate" is defined as "to do or perform." *Id.* Resolving ambiguity in the definition of the word "commit" in favor of the accused, as we must pursuant to the rule of lenity, we conclude that, as used in the statute at issue, the word "commit" requires a defendant to have performed the murder herself in the sense of bringing it to completion or finishing it. At trial, the Commonwealth espoused the theory that Carter, not appellant, was the person who shot the victim in the head and thus "completed" or "finished" the murder.

594

Thus, under the Commonwealth's theory of the case, the Section 9711(d)(6) aggravating circumstance could not have been applied to appellant, who assisted in the planning of the murder but who was not the causal agent directly responsible for bringing the murder to completion.

 The conclusion that Section 9711(d)(6) may not be applied to accomplices such as appellant, in addition to being compelled by the plain meaning of the text under the rule of lenity, is also necessitated by the statutory context. Specifically, in 1989, the Legislature amended Section 9711(d) in several respects. Among the amendments was the addition of subsections (13) and (14) as new aggravating factors. The new subsections provided as follows:

(13) The defendant committed the killing *or was an accomplice in the killing,* as defined in 18 Pa.C.S. § 306(c) (relating to liability for conduct of another; complicity), while in the perpetration of a felony under the provisions of the Act of April 14, 1972 (P.L. 233, No. 64), known as the Controlled Substance, Drug, Device and Cosmetic Act, and punishable under the provisions of 18 Pa.C.S. § 7508 (relating to drug trafficking sentencing and penalties).

(14) At the time of the killing, the victim was or had been involved, associated or in competition with the defendant in the sale, manufacture, distribution or delivery of any controlled substance or counterfeit controlled substance in violation of the Controlled Substance, Drug, Device and Cosmetic Act ... and the defendant committed the killing *or was an accomplice to the killing* as defined in 18 Pa.C.S. § 306(c) ....

42 Pa.C.S. § 9711(d)(13), (14)(as amended 1989)(emphasis added). Unlike the language in subsection (d)(6), the language in these subsections explicitly incorporates accomplices in addition to those who "committed" the killing. If we were to hold that the word "committed" in subsection (6) included accomplices within its scope, then we would necessarily condemn as superfluous the Legislature's use of the word "accomplice" in subsections (13) and (14). Such an interpretation would defy

the axiom of statutory construction that "whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage." *In re Employees of Student Services*, 495 Pa. 42, 52, 432 A.2d 189, 195 (1981); *Commonwealth v. Driscoll*, 485 Pa. 99, 106, 401 A.2d 312, 315 (1979).[3] We will not strain to interpret subsection (d)(6) in a way that would render meaningless the language which the Legislature carefully chose to include in the 1989 amendment to the statute.[4]

Thus, we find that Section 9711(d)(6) may not be applied to an accomplice who does not "commit" the killing in the sense of bringing it to completion or finishing it. It is important to note that our holding in this regard should not be construed as a categorical prohibition against the Commonwealth's seeking

3. We note that the legislative body which passed the amendment containing subsections (13) and (14) in 1989 was not the same legislative body which passed the original version of the statute containing subsection (d)(6) in 1974. However, this Court has long held that the actions undertaken in subsequent sessions of the Legislature are relevant in interpreting a statute which was passed in a previous session of the Legislature. *See Commonwealth v. Wanamaker*, 450 Pa. 77, 89, 296 A.2d 618, 624 (1972)(failure of subsequent legislative body to change by legislative action the law as interpreted by this Court creates a presumption that the interpretation was in accordance with the intent of the Legislature in passing the original statute); *Pennsylvania Labor Relations Bd. v. Uniontown Hospital Ass'n.*, 432 Pa. 146, 149, 247 A.2d 621, 622 (1968)(same).

4. The Commonwealth alludes to the firmly established common law principle that each accomplice bears equal criminal responsibility for the acts of his associate or confederate committed in furtherance of the common design. The Commonwealth argues that in light of this axiom, it would have been redundant of the Legislature to expressly engraft the concept of accomplice liability onto each aggravating circumstance. The Commonwealth overlooks the fact that engrafting the concept of accomplice liability is precisely what the Legislature has done in subsections (13) and (14). Furthermore, the United States Supreme Court has determined that states cannot establish a capital sentencing scheme which makes accomplice liability coterminous with principal liability regardless of the level of the accomplice's involvement. *See Tison v. Arizona*, 481 U.S. 137, 150–52, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987)(participation of accomplice in the crime must be "major" in order for accomplice to be death-eligible). Thus, the common-law principle of equal accomplice liability is inapplicable to the interpretation of aggravating circumstances in Pennsylvania's capital sentencing statute.

the death penalty for accomplices. If an accomplice is found guilty of first-degree murder, the Commonwealth may still seek the death penalty if it can prove that an aggravating circumstance other than Section 9711(d)(6) applies. *See, e.g., Commonwealth v. Lesko,* 509 Pa. 67, 79, 501 A.2d 200, 206 (1985), *cert. denied,* 476 U.S. 1180, 106 S.Ct. 2913, 91 L.Ed.2d 543 (1986)(Commonwealth may seek death penalty for accomplice even when "trigger man" only receives sentence of life imprisonment). Our holding here precludes the Commonwealth only from seeking to utilize Section 9711(d)(6) against an accomplice.

■ Because appellant's underlying claim that the death penalty could not have applied to her is of "arguable merit," we will proceed to the second prong of the ineffective assistance of counsel test, which requires us to determine whether trial counsel had any reasonable basis for his inaction in declining to inform appellant that the Commonwealth bargained away her right to a jury trial with the illusory consideration that it would not seek the death penalty. Clearly, trial counsel could have had no reasonable basis for failing to explain to appellant that a strong argument could be made that the death penalty could not be applied to her under Pennsylvania law. No strategic goals were furthered by trial counsel's failing to fully inform his client of the true nature of the illusory promise with which the Commonwealth sought to bargain away appellant's right to a jury trial.

■ Consequently, we must proceed to the third prong of the ineffective assistance of counsel test, which requires us to determine whether appellant suffered prejudice as a result of trial counsel's ineffective assistance. This Court has elaborated on the "prejudice" prong by stating that there must be "a reasonable probability that, but for the act or omission in question, the outcome of the proceeding would have been different." *Commonwealth v. Lark,* 548 Pa. 441, 450, 698 A.2d 43, 47 (1997) (citing *Commonwealth v. Douglas,* 537 Pa. 588, 597, 645 A.2d 226, 230 (1994)). As Mr. Justice Cappy, writing for the Court, explained the concept: "a defendant is required

to show that counsel's ineffectiveness was of such magnitude that the verdict essentially would have been different absent counsel's alleged ineffectiveness." *Commonwealth v. Howard,* 538 Pa. 86, 100, 645 A.2d 1300, 1308 (1994). Finally, a petitioner must allege actual prejudice and be able to identify a *specific* factual predicate that demonstrates how a different course of action by prior counsel would have better served his interest. *Commonwealth v. DeHart,* 539 Pa. 5, 15, 650 A.2d 38, 43 (1994) (citations omitted).

Here, appellant plainly has not met her burden to show by a reasonable probability that the outcome of her trial would have been different but for trial counsel's ineffective assistance. At the outset, we note that appellant has not even attempted to establish that she would indeed have selected a jury trial had she known that the death penalty likely would not apply to her under Pennsylvania law. Criminal defendants waive their right to a jury trial for many reasons, including the perception of leniency on the part of the trial judge.[5] Appellant failed to either request a hearing in the PCRA court or present affidavits from herself or from trial counsel in an effort to establish that she would have pursued a jury trial but for trial counsel's ineffective assistance in failing to advise her of the possible inapplicability of the death penalty. In the absence of testimony by appellant or trial counsel, this Court cannot presume that appellant would have chosen a jury trial over a non-jury trial. To hold otherwise would be to ignore the fact that the burden of proof is on appellant to set forth a *factual predicate* identifying how her interests would have been better served by trial counsel's taking a different course of action. *See id.*[6]

---

**5.** Indeed, in one of her many pleas for relief in this matter, appellant stated that "I chose to take a trial by Judge because I knew I was not guilty." Letter of June 6, 1990, addressed "to whom it may concern," seeking relief. Thus, the only statement provided by appellant that sheds any light at all on this matter seems to indicate that her steadfast belief in her own innocence, *not* her desire to avoid the death penalty, was the operative motive in her decision to waive her right to trial by jury.

**6.** The dissent overlooks the burden of proof requirement and mischaracterizes the holding of the Court as follows: "The majority proceeds to

Moreover, even if appellant did provide relevant testimony that she would have selected a jury trial but for trial counsel's ineffective assistance, she still would fail to establish by a reasonable likelihood that the outcome of her trial would have been different. Appellant points to nothing in the record which would indicate that the trial judge weighed the evidence improperly or incorrectly, or that a jury would have viewed her case more sympathetically.[7] Thus, given the relevant legal standards, appellant has failed to meet her burden of proof to establish that trial counsel's ineffective assistance prejudiced her.[8] Accordingly, appellant is not entitled to relief.

In her reply brief, appellant argues for the first time that even if her claim of ineffective assistance of counsel cannot survive the "prejudice" prong of the test, she is nonetheless entitled to relief under subsection (a)(2)(v) of the version of the PCRA at issue. The relevant subsection affords relief if the conviction or sentence resulted from "a violation of

conclude that while Appellant's counsel was ineffective in failing to so advise appellant, resulting in her jury waiver, there was no resulting prejudice." The actual holding of the Court in this matter is simply that appellant *failed to prove,* as she must under. the PCRA, that the ineffectiveness of counsel did in fact cause her jury waiver. Thus, we do not consent to the dissent's misinterpretation of this Opinion insofar as it imputes to this Opinion the conclusion that counsel's ineffectiveness was the *cause* of the jury waiver.

7. In light of the fact that the evidence adduced by the Commonwealth at trial easily could have supported a conviction for first-degree murder, it is difficult to ascertain any prejudice to appellant from being tried before a judge who convicted her of the lesser charge of second-degree murder.

8. The dissent takes the view that the deprivation of appellant's fundamental constitutional right to a trial by jury is "presumptively prejudicial." The dissent mischaracterizes the right at issue. Appellant does not assert that she was denied her constitutional right to a trial by jury, but rather that she was denied her constitutional right to the effective assistance of counsel which in turn resulted in her improper waiver of her right to a jury trial. Since this is an ineffectiveness claim, the dissents imposition of "presumptive prejudice" flies directly in the face of the PCRA, which requires that the prejudice prong of an ineffectiveness claim be *"plead and prove[n]* by a preponderance of the evidence." 42 Pa.C.S. § 9543(a)(emphasis added). For the reasons stated above, appellant falls woefully short of proving prejudice.

the provisions of the Constitution, law or treaties of the United States which would require the granting of Federal habeas corpus relief to a state prisoner." 42 Pa.C.S. § 9543(a)(2)(v). Without deciding whether appellant would be entitled to Federal habeas corpus relief, we note simply that appellant did not suggest in her PCRA petition, her brief to the Superior Court, her Petition for Allowance of Appeal, or her initial brief to this Court that she was entitled to relief under Section 9543(a)(2)(v). Thus, this claim is waived under Section 9543(a)(3)(I), *supra* at p. 660, and may not now be entertained for the first time in this Court.[9]

Justice NIGRO concurs in the result.

Justice SAYLOR files a dissenting opinion in which Chief Justice FLAHERTY and Justice ZAPPALA join.

SAYLOR, Justice, dissenting.

I agree with the majority's holding that a prosecution for murder based on accomplice liability will not support the use of the aggravating circumstance set forth in Section 9711(d)(6) of the Judicial Code. The majority proceeds to conclude that while Appellant's counsel was ineffective in failing to so advise Appellant, resulting in her jury waiver, there was no resulting prejudice. It is with this conclusion that I differ. The express demonstration of prejudice required by the majority is insurmountable. As a consequence, the deprivation of Appel-

9. Because we have determined that appellant cannot demonstrate that she suffered prejudice stemming from counsel's ineffectiveness for failing to realize that the Commonwealth's promise not to seek the death penalty constituted illusory consideration, we need not address appellant's alternative claim that counsel was ineffective for failing to object to appellant's waiver of her right to a jury trial on the grounds that any waiver which is induced by the threat of the death penalty is necessarily an involuntary and coercive waiver. Like her first claim, appellant's second claim posits that her waiver was tainted by trial counsel's ineffective assistance. However, for the reasons expressed in this Opinion, appellant has failed to demonstrate that she was prejudiced by trial counsel's alleged ineffective assistance in this regard. We make no finding on the merits of appellant's underlying claim that the Commonwealth may never dissuade a defendant from exercising her right to a jury trial by promising not to seek the death penalty if the defendant chooses to forego her right to a jury trial.

lant's fundamental constitutional right to a trial by jury goes without a remedy.

Unlike the majority, I view this constitutional deprivation as presumptively prejudicial. Thus, I would remand for a new trial.

Chief Justice FLAHERTY and Justice ZAPPALA join this Dissenting Opinion.